| | |
|---|---|
| **CHRISTOPHER CELONA,** | \| |
| **PRUDENCE CELONA,** | \| **C.A. No. 4:15-CV-40147-TSH** |
| **PAUL CELONA,** | \| |
| **Plaintiffs,** | \| |
| | \| |
| **v.** | \| |
| | \| |
| **NEIL ERICKSON,** | \| |
| **In both his official capacity and** | \| |
| **individual capacity as Police Chief,** | \| |
| **JAMES F. TRIFIRO,** | \| |
| **In both his official capacity and** | \| |
| **individual capacity as a Police** | \| |
| **Officer,** | \| |
| **RUSS ST. PIERRE,** | \| |
| **In both his official capacity and** | \| |
| **individual capacity as a Police** | \| |
| **Officer,** | \| |
| **Defendants.** | \| |

**PLAINTIFFS CHRISTOPHER CELONA, PRUDENCE CELONA AND PAUL CELONA'S CONCISE STATEMENT OF MATERIAL FACTS PER FED. R. CIV. P. 56 AND LOCAL RULE 56.1**

1. Plaintiff Christopher Celona resides at 201 Otter River Road in Gardner, MA (Plaintiffs' Response to Defendants' Requests for Admission ¶1)

2. Plaintiff Prudence Celona resides at 201 Otter River Road in Gardner, MA. (Plaintiffs' Response to Defendants' Requests for Admission ¶2)

3. Christopher Celona is married to Prudence Celona. ( Plaintiffs' Response to Defendants' Requests for Admission ¶4)

4. Prudence Celona has a valid LTC     ( Narrative of Trifiro)

5. Plaintiff Paul Celona resides at 333 Main Street Shirley, MA. (Plaintiffs' Response to Defendants' Interrogatories ¶1)

6. Plaintiff Paul Celona resides at 333 Main Street Shirley, MA. (Plaintiffs' Response to Defendants' Interrogatories ¶1)

7. Paul Celona is Christopher Celona's father. (Plaintiffs' Response to Defendants' Requests for Admission ¶5)

8. Paul Celona keeps his firearms at 201 Otter River Road in Gardner, MA. (Plaintiffs' Response to Defendants' Requests for Admission ¶11)

9. Paul Celona has a valid LTC (Narrative of Trifiro)

10. Paul Celona is also a firearms collector (Deposition of Christopher Celona ¶ 35:23.)

11. Neil Erickson ("Erickson") is the Chief of Police for the City of Gardner, Massachusetts and is the authority charged with issuing Massachusetts Licenses to Carry Firearms to residents residing in Gardner, Massachusetts and is employed in the City of Gardner, County of Worcester, in the Commonwealth of Massachusetts. (Defendants' Answer to Plaintiffs' First Amended Complaint ¶7)

12. Defendant James Trifiro ("Trifiro") at all times relevant to this First Amended Complaint, was a police officer employed by the City of Gardner. (Defendants' Answer to Plaintiffs' First Amended Complaint ¶9)

13. Defendant Russ St. Pierre ("St. Pierre") at all times relevant to this First Amended Complaint, was a police officer employed by the City of Gardner. (Defendants' Answer to Plaintiffs' First Amended Complaint ¶11)

14. Christopher Celona has held a License to Carry a Firearm for approximately twenty (20) years. (Plaintiffs' Response to Defendants' Request for Admission ¶12)

15. Christopher Celona has completed approximately three (3) applications to renew his License to Carry a Firearm. (Plaintiffs' Response to Defendants' Request for Admission ¶14)

16. When he was 18, Christopher Celona was convicted of possession of a controlled substance in New Hampshire, marijuana. (Plaintiffs' Response to Defendants' Requests for Admission ¶¶15)

17. The amount was apparently less than one ounce, and there was no element of distribution by Celona involved in the offense. (See Narrative of Trifiro)

18. Christopher Celona did not disclose his New Hampshire conviction on his application for a License to Carry a Firearm, nor did he disclose it on any one of his applications for renewal of his License to Carry a Firearm. (Plaintiffs' Response to Defendants' Request for Admissions ¶¶18, 19)

19. The legal aspects confused Celona: "Because I'm not a lawyer, and I don't know what Section MGL [means], I don't know what that means so it's unclear to me." (See Deposition of Christopher Celona ¶ 19:6.)

20. All three Defendants admitted Christopher Celona tried to renew his LTC prior to the expiration date. (Defendants' Response to Plaintiffs' Request for Admissions ¶4)

21. On April 5, 2015 Trifiro conducted a background check of Christopher Celona and discovered a 1991 guilty finding and $250.00 fine, for the misdemeanor

possession of a controlled substance (marijuana) in New Hampshire. Trifiro confirmed the arrest and informed Chief Erickson of these facts. (See Narrative of Trifiro, Appendix 127.)

22. The next day, April 6, 2015 Chief Erickson drafted a rejection letter to Christopher Celona, stating his LTC application was denied because of the marijuana arrest. (See Chief's Letter, Appendix 130.)

23. During his deposition Christopher Celona stated (See Deposition of Christopher Celona ¶ 23:5):

> Q.    So when is the next time you heard from them [the Defendants] after you gave them the renewal application?
>
> A.    When they came from the house with my denial letter.
>
> Q.    Okay. So you didn't meet with anybody in between?
>
> A.    No.

24. "On April 7th, 2015 Sgt. St. Pierre met with Chris [Celona] at his above listed residence [201 Otter River Road]. At that time Chris was issued a denial letter regarding his application to renew his Class A LTC and the firearms (27) in his residence were confiscated. (Narrative of Trifiro)

25. Some of these weapons belonged to the other two Plaintiffs, both of whom had LTCs. (Narrative of Trifiro)

26. The only members of the Celona family present during St. Pierre's seizure of the arms were the two children of Christopher and Prudence Celona's two children. The other two Plaintiffs were not there. (Deposition of Christopher Celona ¶ 28:12.)

27. Defendant St. Pierre demanded entry into Celona's home, stating that the letter gave him the authority to enter the home and seize Celona's firearms." (Deposition of Chris Celona ¶ 30:12)

28. St. Pierre submitted his own report: "On April 7. 2-15 at approx. 1630hrs, I met with Christopher Celona at 201 Otter River Road to serve him a suspension notice for his LTC. I explained to him that his firearms would need to be seized. Celona was polite and compliant." (Narrative of St. Pierre)

29. During his deposition Christopher Celona testified about St. Pierre's seizure of the other Plaintiffs' weapons:

> Q: Do you remember what he said to you about that?
>
> A: He said that – I told him that he couldn't take the weapons because they belonged to my wife and my dad. And he said he had the denial letter, that this is my authority to take the weapons. I asked him for a warrant. He said he didn't need a warrant because he had this denial letter, which gives him the right to go in and take the weapons. I told him my wife has a license to carry, that they were hers, and he was not to take them. He also had another letter that had that had a list of, I believe five weapons, five guns, that belonged to her in my name that he was going to take. I told him I will be glad to give him the five weapons, but he's not to take any other ones that didn't belong to me. They belonged to my father and my wife. And he said this letter gives him the right to take all of them. (Deposition of Christopher Celona starting at ¶ 30:10.)

30. St. Pierre said that "Officer Lafrennie assisted in logging in all the weapons into evidence." (Narrative of St. Pierre)

31. LaFrennie's "Incident Report", under "Events" listed one action: "FIREARMS CONFISCATION". (Incident Report of LaFrennie)

32. Later Detective William Crockett wrote: "Under the direction of Sgt. Trifiro. I returned seventeen of twenty seven guns which had been confiscated." (Narrative of William Crockett)

33. On April 9, 2015 "Chris was informed on the process relating on how to get the firearms that were confiscated two nights earlier…" (Narrative of Trifiro)

34. Trifiro further wrote: "Prudence informed me one of the firearms confiscated was registered to her. Upon viewing the property sheet regarding Chris' confiscated firearms filled out by Sergeant St. Pierre I confirmed that one of the items listed, a Colt .45 Pistol./Serial #2760644 was registered to Prudence." (Narrative of Trifiro)

35. The three Defendants admitted "that neither a judge nor a magistrate issued a warrant to the Defendants to search the Plaintiffs' property for Weaponry." (Defendants' Response to Plaintiffs' Request for Admission ¶2)

36. "[Christopher] Celona explained that some of the firearms were his wifes and that she has a valid Massachusetts LTC. While examining the guns, he was unable to say which guns belonged to her. Celona also stated that a majority of the guns were family heirlooms and had significant importance to him. I advised him that the firearms could be turned over to her once they were transferred properly at the station." (Narrative of St. Pierre)

37. On April 9, 2015 Trifiro met with the three Plaintiffs at the Gardner Police

Station. Prudence and Paul Celona requested the return of their firearms.

Christopher Celona also said he wanted to transfer all his weapons to Prudence.

"This officer confirmed this process with the FRB [Firearms Records Bureau] that

he [Christopher Celona] needed to go online, access the FRB web page following

the keyword prompts to surrender his firearms to the police and transfer to a buyer

after a surrender. Chris was also informed that since he was surrendering his

firearms vice [versus] selling them he was able to transfer any amount he wish so

long as they were to a lawfully licensed purpose." (Narrative of Trifiro)

38. Under oath at deposition, Christopher Celona disagreed that he compliantly took

Defendant St. Pierre to his basement and voluntarily surrendered the weapons

(See Deposition Christopher Celona ¶ 32:12.):

> Q. Do you agree those statements?
>
> A. I don't agree with those because I didn't want him to go into my
>
> basement, but he said he was going into my basement regardless. So other
>
> than that –
>
> Q. So when you say –
>
> A. -- but when my weapons were locked. I mean he's right there, and
>
> I was polite and compliant, but I didn't give him permission to go in there.
>
> He said he was going in regardless.
>
> Q. So you did not invite him into the home.
>
> A. I did not.

39. The Gardner Police valued the weapons seized at $8,100 (Incident Report of LaFrennie)

40. At Deposition, Prudence Celona testified that she was told by Trifiro that he refused to return her gun because he didn't to do "one offs" which meant: "Meaning he wanted to give us all the guns at once." (Deposition of Prudence Celona ¶ 19:12.)

41. Triforo told Prudence Celona that none of the guns would be released if the guns were returning to her home, because Christopher Celona did not have an LTC. That Prudence had an LTC was not sufficient. All the weapons – including one the Defendants knew was owned by Prudence – were physically transferred to Paul Celona. (Deposition of Prudence Celona ¶ 20:4.)

42. After Christopher Celona was granted an LTC in late 2015, the weapons were physically relocated from Paul Celona's Shirley home to 201 Otter River Road in Gardner, where the other two Plaintiffs lived. ( Deposition of Prudence Celona ¶ 20:11.)

43. All 27 seized firearms were analyzed, checked in the CJIS database, and the following was determined: five of the weapons seized were owned by Christopher Celona; two were owned by Paul Celona; one was owned by Prudence Celona; one was owned by Alan Patz; one was owned by Anthony Celona; and seventeen were not registered or had no confirmed owner. (Narrative of Trifiro)

44. The Defendants refused to release the 17 unregistered weapons until Christopher Celona "surrendered" them on the state database system and transferred them to Paul, Prudence, and Anthony Celona. "In addition, Detective Crocket offered to

assist Chris if during the transactions he required more information off of the firearms that were being stored at P.D." (Narrative of Trifiro)

45. "At the direction of Sgt. Trifiro, I returned seventeen of twenty seven guns which had been confiscated from the Celona residence." (Narrative of Detective William Crocket)

46. Christopher and Prudence Celona raise livestock. Sometime between the confiscation of their weaponry on April 7, 2015 and the return of the weapons, several of their chickens were killed or injured by a wild Coyote, which Christopher Celona watched helplessly and could not stop, because his weapons had been confiscated. ( Plaintiffs' response to defendants' interrogatories ¶ 12)

47. On November 3, 2015 Trifiro discussed with Chief Erickson a letter from the FRB dated October 26, 2015: "The contents of this letter described case law concerning possession of marijuana less than one ounce no longer being a disqualifier in Massachusetts for firearms licensing purposes." (Narrative of Trifiro)

48. In October or November 2015 the Defendants contacted Christopher Celona and invited him to reapply for his LTC, which was approved. (Deposition of Prudence Celona ¶ 20:20.)


Date:  12/01/2016

/s/ J. Steven Foley
J. Steven Foley
BBO # 685741
Law Office of J. Steven Foley
100 Pleasant Street #100
Worcester, MA 01609
Tel: 508-754-1041

Fax: 508-739-4051
JSteven@attorneyfoley.com

## **CERTIFICATION**

I hereby certify that a true copy of the above document will be served on opposing counsel through the ECF electronic filing system.

/s/ J. Steven Foley

J. Steven Foley