## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

| |
|---|
| **CHRISTOPHER CELONA,** |
| **PRUDENCE CELONA,** |
| **PAUL CELONA,** |
| **Plaintiffs,** |
| |
| **v.** |
| |
| **NEIL ERICKSON,** |
| **In both his official capacity and** |
| **individual capacity as Police Chief,** |
| **JAMES F. TRIFIRO,** |
| **In both his official capacity and** |
| **individual capacity as a Police** |
| **Officer,** |
| **RUSS ST. PIERRE,** |
| **In both his official capacity and** |
| **individual capacity as a Police** |
| **Officer,** |
| **Defendants.** |

**C.A. No. 4:15-CV-40147-TSH**

_____

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Now come the plaintiffs, Christopher Celona, Prudence Celona, and Paul Celona, by and through undersigned counsel, and submit their Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment.

Dated: December 1, 2016

> Respectfully submitted,
> Christopher Celona, Prudence Celona, Paul Celona,
> By their Attorney,
> /s/ J. Steven Foley
> J. Steven Foley
> 11 Pleasant St #100
> Worcester MA 01609
> BBO: 685741
> 508-754-1041
> 508-739-4051 (fax)
> JSteven@attorneyfoley.com

# **Table of Contents**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 1

    A. The Parties.................................................................................................................... 1

    B. The denial of Christopher Celona's LTC renewal. ........................................................ 2

    C. The illegal search and seizure in Christopher Celona's home. ....................................... 2

    D. Violation of Prudence and Paul Celona's rights. ......................................................... 4

    E. Facts related to Plaintiffs' claims of lack of due process. .............................................. 6

    F. Immediate damages. ..................................................................................................... 6

    G. Registration Requirement.............................................................................................. 7

ARGUMENT ......................................................................................................................... 7

    I. The standard for Summary Judgment............................................................................. 7

    II. Christopher Celona should be granted a declaratory judgment on Count Counts I and II for the rejection of his LTC firearms application on April 6, 2015. Prudence and Paul Celona should be granted a declaratory judgment on Counts VI and X........................................................... 8

    III. The Defendants had no grounds for a warrantless search and seizure, and there were no exigent circumstances. The Plaintiffs are entitled to a declaratory judgment on the counts for the illegal search and seizure of their weapons................................................................................... 10

    IV. The Plaintiffs' property was seized without due process in violation of the 14th Amendment. The Plaintiffs request summary judgment on Counts V, IX, and XII...................................... 11

CONCLUSION ..................................................................................................................... 13

# TABLE OF AUTHORITIES

Cases

**Arizona v. Gant**, 556 U.S. 332 (2009) ................................................................ 10

**Board of Regents v. Roth**, 408 U.S. 564 (1972) .................................................. 11

**Commonwealth v. Kaeppeler**, 42 N.E.3d 1090 (2015) ........................................ 10

**Commonwealth v. Saia**,, 360 N.E.2d 329 (1977) ................................................ 10

**Pasqualone v. Gately**, 662 N.E.2d 1034 (1996) .................................................... 8

**Payton v. New York**, 445 U.S. 573 (1980) .......................................................... 10

**Pina v. Children's Place**, 740 F.3d 785 (1st Cir.2014) ......................................... 7

**Richmond v. Peraino**, 128 F.Supp.3d 415 (D. Mass. 2015) ................................. 8

**Shelley v. Kraemer**, 334 U.S. 1 (1945) ............................................................... 11

**Sniadach v. Family Finance Corp.** 395 U.S. 337 (1969) ..................................... 11

**Wesson v. Town of Salisbury**, 13 F. Supp. 3rd 171 (D. Mass 2014) .................. 7, 8

Statutes

M.G.L. c. 140, § 129B ................................................................................. 9, 13, 14

M.G.L. c. 140, § 129C ...................................................................................... 7, 10

M.G.L. c. 140, § 129D .................................................................................. 9, 11, 13

# PRELIMINARY STATEMENT

The Plaintiffs sued three Gardner Police officers after the police denied the renewal of one plaintiff's license to carry firearms due to an out of state conviction for possession of marijuana, searched the home of two of the plaintiffs, seized firearms belonging to all three plaintiffs, and refused to return any of the weapons until all of the property was registered in the state's firearms registry database. The plaintiffs claim violations of constitutional rights to be free from unreasonable searches, rights to be free from unreasonable seizures, right to keep and bear arms, right to due process. The plaintiffs also claim monetary damages due to their inability to protect their livestock following the seizure of the firearms used to protect the livestock.

The Plaintiffs seek summary judgment on all counts.

# STATEMENT OF FACTS

## A. The Parties.

Plaintiffs Christopher and Prudence Celona reside at 201 Otter River Road in Gardner, MA. SMF 1. Plaintiff Paul Celona resides at 333 Main Street Shirley, MA. SMF 2. Christopher Celona is married to Prudence Celona. SMF 3. Paul Celona is Christopher Celona's father. SMF 7. In 2014 all three Plaintiffs had valid License to Carry Firearms ("LTC"). SMF 4,9,14.  Paul Celona kept his firearms at 201 Otter River Road in Gardner, MA. SMF 8.

Neil Erickson ("Erickson") is the Chief of Police for Gardner, MA and is the authority charged with issuing Massachusetts Licenses to Carry Firearms to residents residing in Gardner. SMF 11.

Defendant James Trifiro ("Trifiro") and Russ St. Pierre ("St. Pierre") were police officers employed by the City of Gardner during the events in question. SMF 12, 13.

1

**B. The denial of Christopher Celona's LTC renewal.**

Christopher Celona has held a License to Carry a Firearm for approximately twenty (20) years. SMF 14.  Christopher Celona has completed approximately three (3) applications to renew his License to Carry a Firearm. SMF 15. When he was 18, Christopher Celona was convicted of possession of a controlled substance in New Hampshire, marijuana. SMF 16. The amount was apparently less than one ounce, and there was no element of distribution by Celona involved in the offense. SMF 17. Christopher Celona did not disclose his New Hampshire conviction on his application for a License to Carry a Firearm, nor did he disclose it on any of his applications for renewal of his License to Carry a Firearm. SMF 18. The legal aspects confused Celona: "Because I'm not a lawyer, and I don't know what Section MGL [means], I don't know what that means so it's unclear to me." SMF 19. In 2014 Christopher Celona applied to renew his LTC. All three Defendants admitted Christopher Celona tried to renew his LTC prior to the expiration date. SMF 20. On April 5, 2015 Trifiro conducted a background check of Christopher Celona and discovered a 1991 guilty finding and $250.00 fine, for the misdemeanor possession of a controlled substance (marijuana) in New Hampshire. Trifiro confirmed the arrest and informed Chief Erickson of these facts. SMF 21. The marijuana involved was less than one ounce, and there was no element of distribution by Celona involved in the offense. SMF 17. The next day, April 6, 2015 Chief Erickson drafted a rejection letter to Christopher Celona, stating his LTC application was denied because of the marijuana arrest. SMF 22.

**C. The illegal search and seizure in Christopher Celona's home.**

During the course of discovery, the Plaintiffs disclosed written references by members of the Gardner Police Department that the Defendants "confiscated" or "seized" the Plaintiffs' weapons. These statements were made in police reports submitted by two Sergeants, one detective, and a patrolmen. They are listed below.

2

1. "On April 7th, 2015 Sgt. St. Pierre met with Chris [Celona] at his above listed residence [201 Otter River Road]. At that time Chris was issued a denial letter regarding his application to renew his Class A LTC <u>and the firearms (27) in his residence were confiscated.</u> (<u>See</u> Narrative of Trifiro, Appendix 127, emphasis added.) Some of these weapons belonged to the other two Plaintiffs. SMF 24.

2. St. Pierre submitted this report: "On April 7. 2015 at approx. 1630hrs, I met with Christopher Celona at 201 Otter River Road to serve him a suspension notice for his LTC. <u>I explained to him that his firearms would need to be seized.</u> Celona was polite and compliant." SMF 28.

3. St. Pierre said that "Officer Lafrennie assisted in logging in all the weapons into evidence." SMF 30. LaFrennie's "Incident Report", under "Events" listed one action: "FIREARMS CONFISCATION". SMF 31.

4. Detective William Crockett wrote: "Under the direction of Sgt. Trifiro. I returned seventeen of twenty seven guns <u>which had been confiscated</u>." SMF 32.

5. On April 9, 2015 "Chris was informed on the process relating on how to get the firearms <u>that were confiscated</u> two nights earlier…" SMF 33.

6. Trifiro further wrote: "Prudence informed me <u>one of the firearms confiscated</u> was registered to her. Upon viewing the property sheet regarding Chris' <u>confiscated firearms</u> filled out by Sergeant St. Pierre I confirmed that one of the items listed, a Colt .45 Pistol./Serial #2760644 was registered to Prudence." SMF 34.

7. The three Defendants admitted "that neither a judge nor a magistrate issued a warrant to the Defendants to search the Plaintiffs' property for Weaponry." SMF 35.

As Christopher Celona testified at deposition: "He said that – I told him that he couldn't take the weapons because they belonged to my wife and my dad. And he said he had the denial letter, that

3

this is my authority to take the weapons. I asked him for a warrant. He said he didn't need a warrant because he had this denial letter, which gives him the right to go in and take the weapons." SMF 29. The weapons seized were valued by the Gardner Police Department at $8,100.00. SMF 39.

The Defendants did not raise in their Answer to the First Amended Complaint the customary defenses for warrantless searches such as "exigent circumstances", emergency, the possible loss of evidence, etc. (See Defendants' Answer to Plaintiffs First Amended Complaint)

## D. Violation of Prudence and Paul Celona's rights.

The only members of the Celona family present during St. Pierre's seizure of the arms were the two children of Christopher and Prudence Celona's two children. The other two Plaintiffs were not there. SMF 26. Christopher Celona testified at deposition: "I told him my wife has a license to carry, that they were hers, and he was not to take them. He also had another letter that had a list of, I believe five weapons, five guns, that belonged to her in my name that he was going to take. I told him I will be glad to give him the five weapons, but he's not to take any other ones that didn't belong to me. They belonged to my father and my wife. And he said this letter gives him the right to take all of them." SMF 29.

On April 9, 2015 Trifiro met with the three Plaintiffs at the Gardner Police Station. Prudence and Paul Celona requested the return of their firearms. Christopher Celona also said he wanted to transfer all his weapons to Prudence. "This officer confirmed this process with the FRB [Firearms Records Bureau] that he [Christopher Celona] needed to go online, access the FRB web page following the keyword prompts to surrender his firearms to the police and transfer to a buyer after a surrender. Chris was also informed that since he was surrendering his firearms vice [versus] selling them he was able to transfer any amount he wish so long as they were to a lawfully licensed person." SMF 37 (emphasis added).  The information cited in the paragraph above apparently forms the basis of the Defendants' contention that Christopher Celona "surrendered" the weapons, rather than the Defendants

seizing them. As the facts show, the Defendants went to the Plaintiffs' home without a search warrant, told him his weapons were going to be seized because his LTC application was rejected, and then forced him to use a computer requiring Celona to admit he surrendered the weapons, before his illegally seized property was returned. In any event, neither Paul nor Prudence Celona consented to any "surrender" of their property, as they were not at the house on the evening in question. (<u>See</u> paragraphs above.)

 "[Christopher] Celona explained [during the April 7, 2015 seizure] that some of the firearms were his wife's and that she has a valid Massachusetts LTC. While examining the guns, he was unable to say which guns belonged to her. Celona also stated that a majority of the guns were family heirlooms and had significant importance to him. I advised him that the firearms could be turned over to her once they were transferred properly at the station." SMF 36.

All 27 seized firearms were analyzed, checked in the CJIS database, and the following was determined: five of the weapons seized were owned by Christopher Celona; two were owned by Paul Celona; one was owned by Prudence Celona; one was owned by Alan Patz; one was owned by Anthony Celona; and seventeen were not registered or had no confirmed owner. SMF 43.

The Defendants refused to release the 17 unregistered weapons until Christopher Celona "surrendered" them on the FRB database system and transferred them to Paul, Prudence, and Anthony Celona. "In addition, Detective Crocket offered to assist Chris if during the transactions he required more information off of the firearms that were being stored at P.D." SMF 44.  "At the direction of Sgt. Trifiro, I returned seventeen of twenty seven guns which had been confiscated from the Celona residence." SMF 45.

At Deposition, Prudence Celona testified that she was told by Trifiro that he refused to return her gun because he didn't want to do "one offs" which translated thus: "Meaning he wanted to give us all the guns at once." SMF 40.

Trifiro told Prudence Celona that none of the guns would be released if the guns were returning to her home, because Christopher Celona did not have an LTC. That Prudence had an LTC was not sufficient. All the weapons – including one the Defendants knew was owned by Prudence – were physically transferred to Paul Celona. SMF 41.

## E. Facts related to Plaintiffs' claims of lack of due process.

As was shown above, Christopher Celona's LTC application was denied on April 6, 2015. During his deposition (SMF 23) Christopher Celona stated:

> Q.     So when is the next time you heard from them after you gave them the renewal application?
>
> A.     When they came from the house with my denial letter.
>
> Q.     Okay. So you didn't meet with anybody in between?
>
> A.     No.

## F. Immediate damages.

Christopher and Prudence Celona raise livestock. After the confiscation of their weaponry, several of their chickens were killed or injured by a wild Coyote, which Christopher Celona watched helplessly and could not stop, because his and Prudence' weapons had been confiscated. (First Amended Complaint ¶¶¶¶ 36, 37, 38, 39.)

On November 3, 2015 Trifiro discussed with Chief Erickson a letter from the FRB dated October 26, 2015: "The contents of this letter described case law concerning possession of marijuana

less than one ounce no longer being a disqualifier in Massachusetts for firearms licensing purposes."

SMF 47.

The Defendants contacted Christopher Celona and invited him to reapply for his LTC, which

was approved. SMF 47.

Thus, Christopher and Prudence were left without weapons to defend their home.

## G. Registration Requirement

Massachusetts Law requires reporting the transfer of weapons under M.G.L. c. 140, § 129C.

> A seller shall, within seven days, report all such transfers to the commissioner of the department of criminal justice information services according to the provisions set forth in section one hundred and twenty-eight A, and in the case of loss, theft or recovery of any firearm, rifle, shotgun or machine gun, a similar report shall be made forthwith to both the commissioner of the department of criminal justice information services and the licensing authority in the city or town where the owner resides.

There is no requirement for the possessor of a firearm, rifle, shotgun or machine gun to

"register" the item with the criminal justice information services, nor is there a requirement for the

purchaser of a firearm, rifle, shotgun or machine gun to report the purchase. The sole reporting

requirement is on the seller of the item.

## ARGUMENT

## I. The standard for Summary Judgment.

Fed. R. Civ. P. 56(a) states that Summary judgment is appropriate when the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law. "Although all reasonable

inferences are drawn in the nonmovant's favor, the court cannot 'draw *unreasonable* inferences or

credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective.'" See **Wesson v.**

**Town of Salisbury**, 13 F. Supp. 3rd 171, 177 (D. Mass 2014), citing **Pina v. Children's Place**, 740

F.3d 785, 795 (1st Cir.2014). "For a claim to be ripe in the declaratory judgment context, two prongs

must be met – fitness for review and hardship. Fitness involves the question of whether 'the claim involves uncertain and contingent events that may not occur as anticipated or indeed may not occur at all.' [T]he hallmark of cognizable hardship is usually direct and immediate harm, [although] other kinds of injuries occasionally may suffice." See **Wesson v. Town of Salisbury** at 177, (internal citations omitted.)

## II. Christopher Celona should be granted a declaratory judgment on Count Counts I and II for the rejection of his LTC firearms application on April 6, 2015. Prudence and Paul Celona should be granted a declaratory judgment on Counts VI and X.

Christopher Celona should be granted summary judgment on Count I for the rejection of his LTC firearms application on April 6, 2015. He meets the two prong test laid out by the court in **Wesson v. Town of Salisbury**: his case involves hard core facts, not speculation; and there was direct and immediate harm in that his livestock was attacked by a wild animal, which he could have prevented had the Defendants not stripped him of his firearms.

In **Wesson v. Town of Salisbury** the two Plaintiffs, like Christopher Celona, were denied a firearms permit "based on 30 and 40 year old misdemeanor convictions for possession of marijuana." The sole reason given by the Defendants for their decision to deny the Plaintiff's LTC was a 1991 conviction for possession of less than one ounce of marijuana, some twenty five years ago. The **Wesson** case was decided a full year before Christopher Celona was denied the LTC.

Likewise, in **Richmond v. Peraino**, 128 F.Supp.3d 415, 417 (D. Mass. 2015), the plaintiff Steven Richmond, in 1975, was convicted in Florida for simple possession of less than an ounce of marijuana, a misdemeanor for which Richmond paid a $252 fine and served no jail time. Richmond paid $2.00 more than Christopher Celona did in fines; other than that, the fact patterns on the gun permit applications in **Richmond** are nearly identical to the instant case. The court granted Richmond

an injunction specifying that he could not be denied an LTC because of his marijuana conviction.

The question of whether gun owners can retain their firearms pending an appeal was decided by

the Supreme Judicial Court in **Pasqualone v. Gately**, 422 Mass. 398,404, 662 N.E.2d 1034 (1996):

The very statutory provision on which it relies provides that the revocation must be in writing and further that the subject of the revocation has a right of appeal, and that the obligation to turn over the firearms is suspended during the pendency of such an appeal. See M.G.L. c. 140, § 129B (written notice and right to an appeal); M.G.L. c. 140, § 129D (delivery or surrender of weapons upon revocation "unless an appeal is pending").

This applies directly to the instant case. The Defendants denied Christopher Celona his permit

on April 6, 2015, and seized his weapons at the same time that he was notified of the denial, giving him

no opportunity to appeal the denial prior to the deprivation of his property.

Additionally, both Prudence and Paul Celona were denied access to their firearms when they

went to the Gardner police station and demanded they be returned on April 9, 2015. Both had valid

LTCs, and they had the right to access their weapons. The Defendants refused, saying they had had to

be transferred before they were given back; the firearms could not be given to someone living in the

same house as Christopher Celona; they had to be registered by the Plaintiffs before being transferred;

and they would only be returned en masse, not one at a time. There is no basis in law for these

requirements. The "registration" requirement of M.G.L. c. 140, § 129C requires the seller of the item to

report the transfer to the criminal justice information services.

Neither Paul Celona nor Prudence Celona were offered any opportunity for a meaningful

hearing either before or after the deprivation of their property. There were simply instructed that they

must comply with the demands to "register" the firearms before possession was restored.

The Plaintiff therefore requests that the court issue a declaratory judgment to the Plaintiffs on

Count I "Violation of Christopher Celona's Second Amendment Right to keep and bear arms by

denying his License to Carry Firearms", Count II "Violation of Christopher Celona's Second
Amendment Right to keep and bear arms by seizing his firearms"; Count VI "Violation of Prudence
Celona's Second Amendment Right to keep and bear arms by seizing her firearms"; and Count X,
"Violation of Paul Celona's Second Amendment Right to keep and bear arms by seizing his firearms".

### III. The Defendants had no grounds for a warrantless search and seizure, and there were no exigent circumstances. The Plaintiffs are entitled to a declaratory judgment on the counts for the illegal search and seizure of their weapons.

The Defendants admitted they did not have a search warrant.  (See Defendants' Response to
Plaintiffs' Request for Admission ¶2, Appendix p. 110.)

"It is elementary that when a search is conducted without a warrant, the burden is on the
Commonwealth to show that the search falls within the class of permissible exceptions justifying the
warrantless search." See **Commonwealth v. Saia**, 360 N.E.2d 329 (1977); see also **Commonwealth v.
Kaeppeler**, 42 N.E.3d 1090 (2015), quoting **Arizona v. Gant**, 556 U.S. 332, 338 (2009). "We begin
the analysis with the well-settled principle that a warrantless search or seizure is presumptively
unreasonable under the Fourth Amendment and art. 14, and may be justified only by a few 'specifically
established and well-delineated exceptions'"; see also **Payton v. New York**, 445 U.S. 573, 586, 100
S.Ct. 1371, 1379, 63 L.Ed.2d 639 (1980); "Warrantless searches or seizures occurring within a person's
home are 'presumptively unreasonable.'"

In **Pasqualone v. Gately**, 422 Mass. at 403-404, the Plaintiff no longer had a valid firearm
permit:

> Perhaps Gately might have believed that since Pasqualone no longer had a valid license
> to possess the weapons, and since M.G.L. c. 140, § 129D (1994 ed.), provides that on
> revocation of such license "the person whose application was so revoked, suspended or
> denied shall without delay deliver or surrender, to the licensing authority where he
> resides, all firearms ... which he then possesses," there sprang into being an immediate
> right on the part of the police to seize them. But this contention too will not withstand

scrutiny. If Pasqualone had never had a firearms permit of any sort, valid or invalid, only exigent circumstances would have justified Gately's seizing the weapons without a warrant. It is not reasonable to imagine that the revocation of the license somehow gave the authorities a greater latitude in imposing on Pasqualone. Nor is it significant that just this fact pattern does not appear to have been addressed by our cases or Federal cases before. As was said in Anderson, supra at 640, 107 S.Ct. at 3039, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."

This is on all fours. The Defendants did not act reasonably when they searched Christopher and Prudence Celona's home, and seized all three Plaintiffs' firearms.   The court in **Pasqualone** also denied that qualified immunity applied in these circumstances. See Id. beginning at 401.

The Plaintiffs request that the court allow the Plaintiffs' motion for summary judgment on Count III "Violation of Christopher Celona's Fourth Amendment Right to be free from unreasonable seizure"; Count IV "Violation of Christopher Celona's Fourth Amendment Right to be free from Unreasonable Searches"; Count VII "Violation of Prudence Celona's Fourth Amendment Right to be free from unreasonable seizure"; Count VIII "Violation of Prudence Celona's Fourth Amendment Right to be free from unreasonable seizure"; and Count XI "Violation of Paul Celona's Fourth Amendment Right to be free from unreasonable seizure".

## IV. The Plaintiffs' property was seized without due process in violation of the 14th Amendment. The Plaintiffs request summary judgment on Counts V, IX, and XII.

The 14th Amendment Section1 states that "nor shall any state deprive any person of life, liberty or property, without due process of law".

The question of what is "property" has bedeviled the Supreme Court. See **Shelley v. Kraemer**, 334 U.S. 1, 68 S. Ct. 836, 92 L. Ed. 1161(1945) (property definition violates equal protection clause); see also **Sniadach v. Family Finance Corp.** 395 U.S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969)

(enforcing debt of one private party against another deprives one party of property); and **Board of Regents v. Roth**, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) (whether a benefit was considered property.)

That the Defendants seized the plaintiffs' property is not in dispute here. To the contrary the Defendants themselves compiled and released nearly fifty pages of documents listing each firearm received, who owned them, citing their owner name, the serial numbers, valuing them at $8,100.00, and giving an exact description of each firearm.

This leaves us with the "without due process" prong of the two part test.    We need not reinvent the wheel here. The state of Massachusetts already provides a due process procedure. When an LTC owner application is denied a permit, he has the right to a written notice and an appeal under M.G.L. c. 140, § 129B, as the SJC determined in **Pasqualone v. Gately**, 422 Mass. at 404. During this appeal the applicant can keep his firearms per M.G.L. c. 140, § 129D (delivery or surrender of weapons upon revocation "unless an appeal is pending.") This was the due process which the Plaintiffs were both entitled to and denied. Christopher Celona testified at deposition:

> Q.    So when is the next time you heard from them after you gave them the renewal application?
>
> A.    When they came from the house with my denial letter.
>
> Q.    Okay. So you didn't meet with anybody in between?
>
> A.    No.

Instead of allowing the Plaintiff to appeal, the Defendants denied Christopher Celona's LTC and went to his home, gave him a copy of the rejection letter, and without any further ado seized the Plaintiffs' weaponry. Neither Paul nor Prudence Celona were given any due process before or after their weapons were seized.

The Plaintiffs therefore requests that the court allow the Plaintiffs' motion for summary judgment on Count V "Deprivation of Christopher Celona's Fourteenth Amendment Right to Due Process"; Count IX "Deprivation of Prudence Celona's Fourteenth Amendment Right to Due Process "; and Count XII, "Deprivation of Paul Celona's Fourteenth Amendment Right to Due Process".

## **CONCLUSION**

The Plaintiffs request that the court ALLOW their motions for summary judgments on all counts, and award them attorney's fees and costs for this litigation. Further, they request the court to issue the following declaratory judgments against the Defendants:

1. That the Defendants Johnson and Trifiro violated Christopher Celona's rights under the 2nd Amendment of the United States constitution by rejecting his LTC;

2. That the Defendants Erickson, Trifiro, and St. Pierre violated the rights of Christopher Celona, Prudence Celona, and Paul Celona  under the 2nd Amendment of the United States constitution by authorizing the seizure of, or directing seizing their firearms, on April 7, 2015;

3. That the Defendants Erickson, Trifiro, and St. Pierre violated the rights of Christopher Celona and Prudence Celona  under the 4th Amendment of the United States constitution by undertaking  the warrantless search of their home and the seizure of their firearms, or authorizing said searches and seizures, on April 7, 2015;

4. That the Defendants Erickson, Trifiro, and St. Pierre violated the rights of Christopher Celona, Prudence Celona  under the 4th Amendment of the United States constitution by undertaking  the warrantless search and seizure of his firearms, or authorizing said searches and seizures, on April 7, 2015;

5. That the Defendants Erickson, Trifiro, and St. Pierre violated the due process  rights of

Christopher Celona, Prudence Celona, and Paul Celona  under the 14th Amendment of the United States constitution and M.G.L. c. 140, § 129B,  by undertaking  the warrantless search of their home and the seizure of their firearms, or authorizing said searches and seizures, on April 7, 2015.

CERTIFICATE OF SERVICE

I, J. Steven Foley, hereby certify that this document filed through the ECF system was served on all counsel of record.

Date: December 1, 2016                                        /s/ J. Steven Foley

J. Steven Foley